IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANIEL J. STOCKI,                                          CV 06-1661-MA

        Plaintiff,                                OPINION AND ORDER

  v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

    DAVID B. LOWRY
    9900 SW Greenburg Road
    Columbia Business Center, Suite 235
    Portland, OR  97223

        Attorney for Plaintiff

    KARIN J. IMMERGUT
    United States Attorney
    NEIL J. EVANS
    Assistant United States Attorney
    1000 S.W. Third Avenue, Suite 600
    Portland, OR  97204-2902

    NANCY MISHALANIE
    Special Assistant United States Attorney
    Social Security Administration
    701 5th Avenue, Suite 2900 M/S 901
    Seattle, WA  98104-7075

        Attorneys for Defendant

MARSH, J:

Page -1- OPINION AND ORDER

The matter before the Court is plaintiff, Daniel J. Stocki's, Social Security complaint (#2), brought under 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security, which denied his application for disability insurance benefits (DIB). For the reasons that follow, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

## BACKGROUND

Stocki filed applications for DIB, as well as Supplemental Security Income (SSI), benefits on April 27, 1998. In his application for DIB Stocki claimed he become disabled April 1, 1995. In his application for SSI Stocki claimed he became disabled December 31, 1995. In both applications Stocki alleged his disability was due to post traumatic stress disorder (PTSD), tinnitus, hearing loss, Agent Orange exposure, a shoulder injury, and heart and nerve problems.

In order for Stocki to be eligible to receive DIB, the ALJ had to find that Stocki became disabled on or before December 31, 1996, which is the date his insurance expired for this program. *See* 42 U.S.C. § 416(I)(3). At that time he was 46 years old with a high school education and one year of college. Stocki admitted to past work as an electrician, though evidence showed he had also worked as a camping trailer repairman and had earned money picking mushrooms and fishing.

Stocki was ultimately awarded SSI benefits on February 25, 2000, but not DIB benefits. After the Appeals Council denied Stocki's request for review, Stocki filed a complaint in this Court which led to a stipulated remand for a new hearing on the DIB application. An organizational prehearing was conducted October 19, 2004, at which time Stocki's attorney, David Lowry, stipulated to the use of a non-physician medical expert, notwithstanding that the Appeals Council's remand instructions directed the ALJ to "obtain evidence from a medical expert specializing in psychiatry." Psychologist Susan Dragovich, Ph.D., testified at the main hearing held on March 9, 2005. On November 4, 2005, the ALJ issued a written decision again denying Stocki's DIB application, but leaving the prior grant of SSI benefits undisturbed. The Appeals Council denied Stocki's request for review of that decision, making it the Commissioner's final decision.

On appeal to this Court, Stocki contends the ALJ erred by: (1) not complying with the Appeals Council's remand order, and failing to observe the "law of the case"; (2) finding Stocki did not have a "severe" mental impairment prior to December 31, 1996; and, (3) failing to comply with the Commissioner's policy found in Social Security Ruling (SSR) 83-20, regarding establishment of a disability onset date.

**STANDARD OF REVIEW**

The initial burden of proof rests on the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Andrews*, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the

Page -4- OPINION AND ORDER

Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one through four.  *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

Here, at step one, the ALJ found Stocki had not engaged in substantial gainful activity since his alleged onset date of disability.  *See* 20 C.F.R. § 404.1520(b).

At step two the ALJ found Stocki did not have a "severe" impairment prior to the expiration of his disability insured status, December 31, 1996.  *See* 20 C.F.R. § 404.1520(c).  Thus, the ALJ found that Stocki was not "disabled," as defined by the Social Security Act, on or before his date last insured for DIB.  The ALJ did not disturb the prior grant of SSI benefits, beginning January 5, 1998, which was based on a finding that beginning on that date Stocki met or equaled the criteria under 12.04 [Affective Disorders] and 12.06 [Anxiety Related Disorders] of the Listing of Impairments.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

Having found Stocki "not disabled" at step two, the ALJ did not proceed to step three of the sequential evaluation.

## DISCUSSION

I.  **Stocki's procedural objections to the ALJ's decision lack merit.**

   A.  **The "law of the case" doctrine did not prevent the ALJ from making a finding at step two of the sequential evaluation.**

Stocki contends the ALJ's decision must be reversed because he failed to comply with the directions in the Appeals Council's remand order of November 30, 2002, in contravention of a social security regulation directing the ALJ to "take any action that is ordered by the Appeals Council and...any additional action that is not inconsistent with the Appeals Council's remand order." *See* 20 C.F.R. § 404.977(b).  Specifically, Stocki alleges the ALJ should not have assessed whether Stocki suffered from a "severe" impairment during the period under review, at step two of the sequential evaluation.  Stocki argues that "the severity issue was arguably already decided in [his] favor," so the ALJ's "decision to return to step 2 violated the AC's Order and arguably the law of the case doctrine."

This Court's review is limited to determining whether the Commissioner's final decision, which in this case was the ALJ's written decision dated November 4, 2005, is based on substantial

evidence and correct legal standards. 42 U.S.C. § 405(g). This Court does not review whether the ALJ complied with an Appeals Council remand order. However, if this Court were to conduct such a review, it would consider the Appeals Council's denial of Stocki's request for review to be signficant, as it suggests the Appeals Council was not persuaded that the ALJ failed to comply with its order. *See* 20 C.F.R. § 404.970(a)(stating that the Appeals Council will grant review of an ALJ's decision if it contained an abuse of discretion, an error of law, unsupported conclusions, or if the decision was in contravention of the Commissioner's policies or procedures).

Further, there is not any merit to Stocki's argument that the step two severity issue had been decided in his favor in the ALJ's February 25, 2000 decision. The ALJ expressly limited his findings in that decision to the period beginning January 5, 1998. No findings were made regarding the period under review in the final decision before this Court (dated November 5, 2005). To the contrary, the February 25, 2000 decision expressly found that Stocki did not suffer from a "medically-determinable impairment...during the period of time prior to January 5, 1998." Therefore, it was not only appropriate, but necessary, for the ALJ in this case to evaluate whether Stocki had any "severe"

impairments on or before his insured status under Title II of the Social Security Act expired, on December 31, 1996.

Stocki's argument that the "law of the case" prevented the ALJ from reassessing whether he had a "severe" impairment on or before December 31, 1996, also lacks merit. Since the ALJ's November 5, 2005 decision did not involve a remand from this Court, there was not any "law of the case" to preserve. *See e.g. Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998)("law of the case" doctrine precludes the ALJ on remand from reexamining issues that were implicitly left intact by a reviewing court on judicial review of the Commissioner's decision).

    **B.   Stocki waived any objection to the qualifications of the Medical Expert.**

Stocki alleges the ALJ failed to comply with the Appeals Council's order to "obtain evidence from a medical expert specializing in psychiatry" because the medical expert "lack[ed] expertise in the area of PTSD for Vietnam Veterans." Since this Court will not review claims that the ALJ failed to comply with an Appeals Council remand order, I will not comment on this claim, except to note that Stocki waived any objection to the medical expert Susan Dragovich, Ph.D.

First, at the prehearing conference to discuss the Appeals Council's remand order, Stocki's counsel waived any objection to

using a pscholgist as the medical expert, rather than a psychiatrist, as specified in the remand order. Then, at the hearing itself, on March 9, 2005, Stocki's counsel stated, "I have no questions about her qualifications. I object to Dr. Dragovich on the grounds that she never thinks anything's wrong with anybody."

## II.  The ALJ's step two finding was based on substantial evidence and legally sound reasoning.

Stocki contends that the ALJ's step two severity finding is "unsupported by the evidence" because: (1) the ALJ "ignored the presence of symptoms and medical opinions which establish the existence of PTSD prior to plaintiff's 12/31/96 [date last insured]"; (2) the ALJ "refused to assign any weight and essentially ignored the [Veteran's Administration's] decision to award a 70% and then 100% service connected disability for PTSD, commencing January, 1998"; (3) the ALJ "ignored the well established case law about the relevance of retrospective medical opinions" and specifically ignored "the opinions of Dr. Jackson and counselor Aviotti who provided detailed explanations for their retrospective opinions"; and, (4) the ALJ improperly rejected all of plaintiff's testimony about his PTSD symptoms due to the absence of medical records prior to his [date last

insured] and other unpersuasive reasons."  I address these arguments below.

### A.    Legal Standards

In order to prove an alleged impairment is "severe" the claimant must show (i) that he suffers from a "medically determinable physical or mental impairment," and (ii) that the medically determinable impairment significantly limits his physical or mental ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1504, 404.1520(c); *see also Edlund*, 253 F.3d at 1159-60.

To show a "medically determinable physical or mental impairment" the claimant must proffer "medical evidence consisting of signs, symptoms, and laboratory findings," not simply his own subjective statement of symptoms.  20 C.F.R. § 404.1508.  If the claimant makes such a showing, he must also prove the impairment significantly limits his ability to: walk, stand, sit, lift, push, pull, reach, carry, handle, understand, carry out and remember simple instructions, use judgment, respond appropriately to supervisors, co-workers, and usual work situations, and/or deal with changes in a routine work setting. 20 C.F.R. § 404.1521.  An impairment is not severe if it has no more than a minimal effect on the claimant's ability to do these types of activities.  *See* SSR 96-3p.

**B.  Analysis**

In this case, the ALJ found that Stocki did not even meet the first prong of the test, above, of establishing that he suffered from a medically determinable illness during the period under review.  Stocki was unable to produce, or to direct the ALJ to, any "medical or mental health records documenting any mental health impairment" prior to December 31, 1996.  Stocki testified that he had received treatment at the Vet Center in Riverside, California prior to December 1996, but when the ALJ sent for these records the VA responded that "they do not exist."  Stocki also inconsistently testified that he did not know until 1998 that treatment and assistance was available to him at no cost through the Veterans Administration.  Due to the lack of supporting medical evidence from the period under review, the ALJ relied heavily upon the testimony of Dr. Dragovich, who testified as a medical expert at the hearing on March 9, 2005.  Dr. Dragovich stated that there was not any reliable means of "extrapolating" from more recent records Stocki's mental condition during the period under review.

Stocki argues, first, that the ALJ ignored the symptoms and medical opinions that show he did have PTSD prior to December 31, 1996.  Specifically, Stocki points to: (i) a letter dated March 25, 1998, from a "Readjustment Counseling Therapist" named Gary Kunderman, stating that Stocki suffered from PTSD since returning

Page -11- OPINION AND ORDER

from Vietnam; (ii) a progress note dated April 7, 2000, written by Thomas Jackson, Ph.D., Chief Psychologist at the Roseburg VA, stating that he couldn't believe Stocki's original disability application was denied because he "should have been carrying [a PTSD] diagnosis for the last 30 years"; (iii) a letter dated April 4, 2000, from Stocki's counselor, Susan Aviotti, stating that Stocki "was not able to function in a job from 1970 to 1980 due to the severity of his PTSD," that he "has not been able to function in a work setting since 1995," and that he suffers from various symptoms and social difficulties.

I do not find any merit to this argument because none of these sources constitutes, or even references, medical evidence obtained during the period under review. Stocki's argument that retrospective medical opinions should not be discredited "solely on that basis" has no bearing here, where these opinions were not discredited because they were formulated retrospectively. The opinions simply do not meet the standard of proof required under the regulations for establishing a "medically determinable impairment." It bears noting, too, that only Dr. Jackson's opinion even qualifies as a "medical opinion." *See* 20 C.F.R. § 404.1513(a)(2)("Acceptable medical sources are...[*inter alia*] licensed or certified psychologists...").

Stocki next argues that the ALJ "refused to assign any weight and essentially ignored the VA's decision to award a 70%

and then 100% service connected disability for PTSD, commencing January, 1998." To be clear, Stocki was awarded VA disability compensation benefits beginning February 1, 1998, based on a finding that he was 100 percent disabled under the VA's regulations, and that 70 percent of his disability was "service connected," or attributable to his experience in the service.

Under the VA's regulations (38 U.S.C. § 5305) a veteran is entitled to begin receiving benefits on the first day of the month after he or she becomes entitled to the benefits. Stocki applied for VA disability compensation January 20, 1998. As Stocki points out, the VA's decision not to award benefits prior to this time was not based on a lack of medical evidence, but on this regulation. Accordingly, the VA's written decision granting Stocki VA disability compensation did not make any findings regarding his pre-1998 medical condition. Nevertheless, because there was no VA "disability rating" prior to 1998 for the Commissioner to afford "great weight," as he is generally required to do (*McCartey v. Massanari*, 298 F. 3d 1072, 1076 (9th Cir. 2002)), there is not any merit to Stocki's contention that the ALJ erred in this respect.

Finally, Stocki argues that the ALJ improperly rejected his testimony because of the lack of medical evidence to substantiate it, and "other unpersuasive reasons." This argument is completely without merit because, as the ALJ stated, Stocki's

credibility was "not pivotal" at step two of the sequential evaluation. The ALJ wrote

> Under our rules, great weight is accorded a person's subjective complaints only after the existence of an underlying severe impairment to account for them is established. Thus, even if Mr. Stocki's testimony and other subjective complaints were accepted as fully credible, this still would not be sufficient to establish the existence of a severe impairment, absent objective medical confirmation, or at least a reliable medical opinion indicating that serious underlying impairment(s) can be inferred during the earlier period in question.

In sum, I do not find any merit to Stocki's allegations of ALJ error at step two of the sequential evaluation. Rather, I find the ALJ's step two evaluation was based on substantial evidence and sound legal reasoning.

**III. The ALJ did not err by rejecting Stocki's claim that he has been disabled since April 1995.**

Stocki claims the ALJ erred "by failing to apply the mandates of SSR 83-20 to accept the onset date of April, 1995, prior to plaintiff's [date last insured]." He argues that since Dr. Dragovich testified she was unable to establish when Stocki's disability began the ALJ should have deferred to Dr. Jackson and Counselor Aviotti's opinions that Stocki's "PTSD has existed at a disabling level which precludes employment since at least 1995."

The first flaw with this argument is that it takes for granted that Stocki met his burden of showing he was disabled on or before December 31, 1996, yet the ALJ found that Stocki did

not even meet his burden of showing he suffered from a medically determinable impairment prior to, or as of, this date.

Moreover, contrary to Stocki's contention, SSR 83-20 does not mandate wholesale acceptance of a DIB claimant's alleged onset date of disability. The policy statement plainly contemplates just this situation where the medical evidence is not consistent with the claimant's allegation. It states, "the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence." *Id*. at 1. Medical evidence is "the primary element in the onset determination," according to SSR 83-20, so the onset date "can never be inconsistent with the medical evidence of record." Thus, even if the ALJ had credited Stocki's testimonial and earnings reports regarding when his disability began, he could not have found Stocki disabled as of this date without a "legitimate medical basis" for doing so. *Id*. at 3.

Stocki claims Dr. Jackson and Counselor Aviotti's above referenced opinions provided sufficient medical evidence from which the ALJ could have inferred that Stocki became disabled in 1995. Yet, SSR 83-20 requires the ALJ to "call on the services of a medical advisor when onset must be inferred." *Id*. at 3.

The ALJ complied with this policy by questioning Dr. Dragovich, who testified that such an inference was not possible, not because she lacked expertise in PTSD, as Stocki suggests, but because:

> there's an absence of records prior to [January 1998] and in relation to the self-report and the clinical narratives, I know there is [sic] 3 different things: one is prior to that time he was working; he was drinking alcohol which stopped apparently in January of 1998 and there were many references that when he began to go to the VA Hospital for treatment in January of 1998 that that experience itself exacerbated and intensified symptoms for him. So, by that narrative or by that description, I would take that whatever was occurring at that point, it had been less than that prior to that point to whatever extent it existed. Many references to being in denial for 30 years, drinking heavily and functioning. And then the drinking stops, he enters the hospital and the symptoms become serious. So, I'm just taking from those points from the narrative, self-report and from the clinical clinician's observations.

In light of the preceding discussion, I find the ALJ did not err by rejecting Stocki's alleged onset date of disability.

## **CONCLUSION**

Based on the foregoing, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 25_ day of September, 2007.

                                  /s/   Malcolm F. Marsh
                                  Malcolm F. Marsh
                                  United States District Judge